Monica Fabbi, ISB No. 10018
mfabbi@ifhcidaho.org
INTERMOUNTAIN FAIR HOUSING COUNCIL
4696 W Overland Rd, Ste 140
Boise, ID 83706
Tel: (208) 383-0695
Fax: (208) 383-0715

Alyson A. Foster, ISB No. 9719
alyson@bdfcounsel.com
Taylor J. Long, ISB No. 11966
tlong@bdfcounsel.com
BJORKMAN DEMPSEY FOSTER PLLC
714 W. State Street
Boise, ID 83702
Tel: (208) 401-9533
Fax: (855) 940-1879

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JANE DOE, an individual; KELLY DOE, an individual; JOHN DOE, an individual; and DOES I-X,<br><br>　　Plaintiffs,<br><br>v.<br><br>THE UNIVERSITY OF IDAHO, a public university,<br><br>　　Defendant. | Case No. 1:23-cv-00409-AKB<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO PROCEED ANONYMOUSLY** |

Plaintiffs Jane Doe ("Jane"), Kelly Doe ("Kelly"), and John Doe ("John") ("Plaintiffs"), by and through their undersigned counsel of record, respectfully submit this Memorandum in Support of Plaintiffs' Motion for Leave to Proceed Anonymously.

## BACKGROUND

Plaintiffs filed their Complaint and Demand for Jury Trial on September 15, 2023. (Dkt. 1.) Jane, Kelly, and John are or were students at the University of Idaho's College of Law. (*Id.* at ¶¶ 14-16.) Plaintiffs allege, among other things, that the University discriminated against them because of their race, disability status, and/or sexual orientation. (*Id.* at ¶¶ 7-8.) Plaintiffs are in the process of serving the Complaint in accordance with Federal Rule of Civil Procedure 4.

On September 22, 2023, the Court issued an Order to Show Cause re: Plaintiffs Proceeding Anonymously instructing Plaintiffs to show cause, by motion, why their complaint should not be dismissed for failure to comply with Federal Rule of Civil Procedure 10(a). (Dkt. 3 at 2.) Plaintiffs file this motion to comply with that Order. Plaintiffs demonstrate below that they meet the narrow requirements for proceeding anonymously, and that a protective order would eliminate any prejudice to the Defendant from allowing them to do so. If, however, the Court disagrees and finds that any Plaintiff may not proceed anonymously, Plaintiffs request leave to amend the Complaint accordingly.

## ARGUMENT[1]

### I.   Legal Standards

Federal Rule of Civil Procedure 10(a) requires that the title of a complaint name all the parties. "Similarly, Rule 17(a) provides that '[a]n action must be prosecuted in the name of the real party in interest.'" *Doe v. Blackfoot Sch. Dist. # 55*, No. 4:12-CV-589 BLW, 2014 WL 806454, at *2 (D. Idaho Feb. 28, 2014). "The identity of the real party in interest 'should not be concealed except in an unusual case, where there is a need for the cloak of anonymity.'" *Doe v. College of Eastern Idaho*, No. 4:22-cv-00482-DCN, 2023 WL 4138674, *1 (D. Idaho June 22, 2023) (quoting *United States v. Stoterau*, 524 F.3d 988, 1012 (9th Cir. 2008)). The Court has discretion to "allow parties to use pseudonyms in the unusual case when nondisclosure of the party's identity is necessary to protect a person from harassment, injury, ridicule or personal embarrassment." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-68 (9th Cir. 2000) (cleaned up). "Such discretionary decisions are considered 'case management' and are reviewed under an abuse of discretion standard." *College of Eastern Idaho*, 2023 WL 4138674, at *1 (citing *Advanced Textile*, 214 F.3d at 1069)).

While the use of fictitious names is the exception, courts permit their use when special circumstances justify secrecy. *Advanced Textile*, 214 F.3d at 1067. The Ninth Circuit has identified three separate tests under which a party could be permitted to use a pseudonym: (1) "when identification creates a risk of retaliatory physical or mental harm";

---

[1] Underlined case citations are hyper-linked to the case, and cited page or section where possible, in Westlaw.

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR LEAVE TO PROCEED ANONYMOUSLY – 3**

(2) "when anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature"; and (3) "when the anonymous party is compelled to admit his or her intention to engage in illegal conduct, thereby risking criminal prosecution." *Id.* (cleaned up).

Courts must balance the need for anonymity against the public interest in transparency in the courts and the risk of unfairness to the opposing party. *Id.* at 1068. This balance may change as the litigation progresses. *Id.* at 1069. Thus, "where the plaintiffs have demonstrated a need for anonymity, the district court should use its powers to manage pretrial proceedings and to issue protective orders limiting disclosure of the party's name to preserve the party's anonymity to the greatest extent possible without prejudicing the opposing party's ability to litigate the case." *Id.* "It may never be necessary, however, to disclose the anonymous parties' identities to nonparties to the suit." *Id.*

## II.   Identification Would Create a Risk of Retaliatory Physical or Mental Harm

First, Plaintiffs should be allowed to proceed anonymously because identification of their true names would create a risk of retaliatory physical or mental harm. When considering the retaliation test for a pseudonym, the Court must balance five factors: "(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, (3) the anonymous party's vulnerability to such retaliation, (4) the prejudice to the opposing party, and (5) the public interest." <u>College of Eastern Idaho</u>, 2023 WL 4138674 at *2 (citations omitted). The first two factors are the most important and should be addressed together. <u>Id.</u> (citation omitted). Plaintiffs must have been threatened and "a

reasonable person would believe that the threat might actually be carried out." *Advanced Textile*, 214 F.3d at 1071. The threat need not involve "a danger of physical injury," but it needs to be a "threatened retaliation" for it to be considered reasonable. *Id.* Such threatened retaliation can come from third parties. *College of Eastern Idaho*, 2023 WL 4138674, at *2.

Weighing those factors here, anonymity is appropriate. In their declarations and the Complaint, Plaintiffs describe how students and faculty members retaliated against them for raising concerns with discrimination, and the physical and mental harm they suffered as a result. Each Plaintiff came forward to report and attempt to address the discriminatory behavior and environment to the University. In response, other students and/or University employees engaged in further discriminatory and harsh conduct that caused them severe mental harm. This is precisely the type of situation where fear of retaliation is real and the harm severe.

For example, when John reported Student X's use of a homophobic slur against John, outing John's sexuality, and engaging in public mockery of the LGBTQIA+ community, the University did not protect John. Defendant engaged in an unfair and biased process. The University did not credit John Doe's testimony of his experience; it found the evidence "inconclusive" because of unwarranted bias toward Student X's testimony; the University tried to force John away from his midterms just to pursue an appeal; and ultimately the University allowed Student X to continue attending class with John Doe. (John Doe Dec. ¶¶ 4-5; Dkt. 1 ¶¶ 74-79, 87-89.)

When John appealed the "inconclusive" findings, other students cornered him at a

party and began pressuring him to "drop" his appeal and "move on." (John Doe Dec. ¶ 7; Dkt. 1 ¶ 90.) When he said he would not, they began making degrading and harassing comments to him that made him feel further threatened. (John Doe Dec. ¶ 7; Dkt. 1 ¶ 90.) John is now worried that, if other students find out he has brought this lawsuit, they will do the same thing again: find a way to harass him—either online or in person if he needs to go to Idaho—and retaliate against him as they have done before. (*Id.* ¶ 8.)

John's fears are justifiable.[2] Indeed, the Idaho Student Conduct Board ("ISCB") found that Student X's use of the slur was hostile and directed at John Doe due to his sexuality, and that John Doe's fear of being attacked by Student X was therefore reasonable. (John Doe Dec. ¶ 9.) John Doe does not believe the University can or would protect him if his identity becomes public and other students engage in the type of behavior that caused him to file this lawsuit in the first place. (*See also, e.g.*, Dkt. 1 ¶ 82 (University promised John it would provide additional parking lot security but apparently did not do so).)

Kelly Doe likewise experienced retaliatory treatment from students and faculty after actually or reportedly standing up for herself. After students falsely believed she had raised a concern about "white people" at orientation, they ostracized her, slammed doors in her face, avoided working with her in small groups. (Kelly Doe Dec. ¶¶ 3-4; Dkt. 1 ¶¶ 52, 53, 55.) Students then spread false rumors about her egging a white classmate's truck, which

---

[2] John's fears are also informed by his prior experiences that reveal the real possibility of violence against John based on his sexuality. (John Doe Dec. ¶¶ 10-12.)

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR LEAVE TO PROCEED ANONYMOUSLY – 6**

caused her great distress and fear. (Dkt. 1 ¶¶ 126-128.) When Kelly did report discrimination to the University, professors treated Kelly coldly, intimidated her off-campus, and gave her a lower grade without an opportunity to correct it. (*Id*. ¶¶ 5,10; Dkt. 1 ¶¶ 57, 144-145, 151.) Kelly's therapist opined in a written letter to CDAR that Kelly's development of mental health disorders directly correlated with the traumatic events and discriminatory treatment she received at the law school. (Kelly Doe Dec. ¶ 14; Dkt. 1 ¶ 152.)

Jane, too, experienced harmful treatment by students (and faculty) when she came forward to raise concerns with the law school environment. Jane and Kelly joined the Moment of Community to express solidarity with the LGBTQIA+ community in the face of a homophobic slur written in a classroom. (Jane Doe Dec. ¶ 5.) Other students physically surrounded them and forced them to join a prayer circle, and then denigrated her for being gay. (*Id.*; Dkt. 1 ¶ 107.) No one from the University helped her. (Jane Doe Dec. ¶ 6; Dkt. 1 ¶ 108.) When Jane continued standing up for her community, professors and students who openly advocate against the LGBTQIA+ community began trying to intimidate her (for example, by emailing and leaving notes in her carrell asking to "speak" with her "privately"). When Jane spoke up at an ABA student meeting, some of those very same students responded that they are in a "culture war" and "are going to win."

This is not a civilized conversation between students. These are tactics undertaken to intimidate and frighten. Jane was frightened. She had a panic attack and had to leave class to attend remotely. Even then, she still received online harassment by another student in a leadership position (an SBA student representative) shaming Jane for reporting and

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR LEAVE TO PROCEED ANONYMOUSLY – 7

talking about discrimination and participating in the walkout and asking her to not speak publicly about her experiences and to keep them private. (Jane Doe Dec. ¶ 10.)

Leaving Idaho did not stop the harassment. (*Id.* ¶ 12.) CLS students, and the professor who spoke against homosexuality at the Moment of Community, brought a lawsuit against the University in the summer of 2022. Jane was served with a subpoena by a process server who promised: "I can find you anywhere." (*Id.*) She then learned that the professor had released her personal information to the Alliance Defending Freedom, a recognized anti-LGBTQIA+ hate group. (*Id.*) Jane continues to be fearful that she will be targeted online, and possibly in person, if her identity becomes public.[3]

Finally, publication of Plaintiffs' names would create another real risk of retaliatory harm. If Plaintiffs' true names are revealed to the public, two of them will simultaneously be outed publicly as LGBTQIA+. (Jane is already "out.") They have already been mistreated—and, in John's case, physically assaulted—because of their sexuality. The risk to their safety outweighs the public's interest in knowing their names in this proceeding.

In sum, Plaintiffs' anxiety about coming forward and fears of being targeted again are reasonable based on what they have already been through. The intimidation by other students and lack of help from the University have already created severe mental harm that Plaintiffs are already dealing with. Plaintiffs should be able to pursue their rights in this lawsuit without facing renewed intimidation and lack of support in trying to finish their education.

---

[3] Jane's family remains in Idaho and Jane is worried that, if her identity becomes publicly known, they too will be targeted. (*Id.* ¶ 15.)

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR LEAVE TO PROCEED ANONYMOUSLY – 8**

### III. Anonymity Is Necessary to Preserve Plaintiffs' Privacy in Matters of Sensitive and Highly Personal Nature

Plaintiffs also should be allowed to proceed anonymously to preserve their privacy in a matter of sensitive and highly personal nature: their disabilities and mental health. When considering the privacy test for a pseudonym, the Court must balance three factors: (1) the party's stated privacy concerns; (2) the prejudice to the opposing party; and (3) the public interest. *College of Eastern Idaho*, 2023 WL 4138674 at *3 (citing *D.T. v. Armstrong*, No. 1:17-cv-00248-EJL, WL 2636519, *2 (D. Idaho June 16, 2017). "It is the right of everyone to preserve their privacy and decide when and how to disclose personal information if they so choose." *Id.* The "practice has developed permitting individuals to sue under fictitious names where the issues involved are matters of a sensitive and highly personal nature." *College of Eastern Idaho*, 2023 WL 4138674 at *3 (quoting *Doe v. Deschamps*, 64 F.R.D. 652, 653 (D. Mont. 1974)).

In considering the first factor, stated privacy concerns can "include detailed, personal, and potentially embarrassing facts regarding [a person's] medical conditions and behavior issues that, if disclosed, might hinder [a person's] ability to socialize, find employment, and otherwise integrate in his community." *College of Eastern Idaho*, 2023 WL 4138674 at *3 (quoting *Armstrong*, 2017 WL 2636519 at *2). Other matters that have been considered sensitive and highly personal in nature include birth control, abortion, welfare, and homosexuality. *College of Eastern Idaho*, 2023 WL 4138674 at *3 (quoting *Deschamps*, 64 F.R.D. at 653 (collecting cases)).

The Complaint and Plaintiffs' Declarations detail their ongoing physical and mental disabilities, both those that existed before they came to law school and those that were caused or exacerbated by their experiences at the University. Each Plaintiff will soon be seeking employment in the legal profession. They are sincerely and reasonably afraid that, if their identities become public, future employers will find this lawsuit, learn about their health conditions, and either not hire them or treat them differently if they do hire them. These are well-understood and, unfortunately, reasonable fears. There remains a stigma around mental health conditions, including in the legal profession, that can interfere with employment possibilities.

John Doe has disclosed his dyslexia, PTSD, and bone degenerative disease because some of his claims allege retaliation based on his pursuit of accommodations. (John Doe Dec. ¶ 16.) John works hard to manage his disabilities privately and would like the option of not disclosing them to future employers. (*Id.*) He is particularly aware of the stigma around PTSD, and he fears it will interfere with his employability as an attorney. (*Id.*)

Kelly has similar fears. As a result of the hostile environment and discrimination at the law school, Kelly began experiencing fear, depression, and daily anxiety attacks. (Kelly Doe Dec. ¶ 14.) She ended up in the hospital and was treated for dehydration and malnutrition. (*Id.*) Her mental health continued to decline, and she was diagnosed with depression, anxiety, PTSD, and adjustment disorder. (*Id.*) The therapist who diagnosed her concluded that her mental health decline directly correlated with the traumatic events and discriminatory treatment she experienced at the law school. (*Id.*)

Jane shares these fears. Jane disclosed in the Complaint that she has mental and physical disabilities, and that her mental health declined rapidly and severely because of the ongoing stress and tension caused by the events on campus. (Dkt. 1 ¶ 133.) She described her panic attacks (¶ 123) and admitted that her disabilities were exacerbated to the point that she required classroom and testing accommodations (¶ 14).

All three Plaintiffs fear that the unwarranted stigma around mental health conditions will negatively affect their futures and employability in the legal profession. (Kelly Doe Dec. ¶ 17; Jane Doe Dec. ¶ 15.) If potential future employers were to discover Plaintiffs suffer from depression, anxiety, PTSD, or any other disability, the harm to Plaintiffs could be disastrous.

Anonymity is also necessary to preserve privacy in this matter because this case involves Plaintiffs' sensitive and highly personal medical conditions. Plaintiffs allege that their damages in this case include severe harm to their mental health. They therefore have disclosed specifics around their diagnoses as necessary to explain their case. Plaintiffs' interest in keeping their mental health confidential outweighs the need for them to use their true name in this proceeding.

Finally, and unfortunately, stigma related to LGBTQIA+ sexuality remains prominent in society. It should remain Plaintiffs' choice of whether, when, where, and with whom they share their sexuality, a highly personal and intimate matter. As Plaintiffs enter the job market and move forward with their lives and careers, Plaintiffs should have the discretion and ability to maintain their privacy in this regard to protect their safety and to guard against discriminatory treatment. *See, e.g.*, <u>College of Eastern Idaho</u>, 2023 WL

4138674 at *3 ("Other matters that have been considered sensitive and highly personal in nature include birth control, abortion, welfare, and homosexuality.") (quoting *Deschamps*, 64 F.R.D. at 653). Publication of Plaintiffs' identities in this lawsuit would compromise their ability to do so. As demonstrated below, Defendant's and the public's interests do not warrant that outcome.

### IV. Any Prejudice to the Defendant May be Addressed through an Appropriate Protective Order

In comparison to the harms described above to Plaintiffs, publicization of Plaintiffs' names would provide no benefit to Defendant in litigating this case. Indeed, Plaintiffs do not seek to keep their identities anonymous from the Court or from Defendant: Plaintiffs have filed declarations revealing their true names attached to a motion under seal, which they have also provided to Defendant.

To the extent Defendant could be prejudiced from not knowing Plaintiffs' identities—for example, by being unable to respond to allegations in the Complaint—such prejudice may be addressed through an appropriate protective order. Specifically, a protective order could "limit[] disclosure of the [Plaintiffs'] name[s] to preserve [their] anonymity to the greatest extent possible without prejudicing [Defendant]'s ability to litigate the case." *Advanced Textile*, 214 F.3d at 1069. At the trial stage, if the need for anonymity remains, protections could be tailored accordingly. Indeed, "[i]t may never be necessary . . . to disclose the anonymous parties' identities to nonparties to the suit." *Id.*

### V. The Public Interest Will Not Be Unduly Harmed

Finally, Plaintiffs' anonymity does not unduly harm the public interest in court

transparency. Plaintiffs seek only to keep their identities private, not the circumstances of the case itself. The public interest would be served without disclosing Plaintiffs' true identities because "there is nothing critical to the working of justice to reveal their identit[ies.]" *Jane Roes 1–2 v. SFBSC Management, LLC*, 77 F. Supp. 3d 990, 996 (N.D. Cal. 2015). "The great bulk of this case will be on the public record ... [including] [t]he basic facts of the plaintiffs' [experiences] and the defendant['s] challenged conduct, the court's reasoning, and the resulting interplay of those things ... will be open to the public." *Id.* The public will have access to the substance of the public record in this case and will know the facts and law addressed by the parties and the Court. Thus, the public interest will still be served despite Plaintiffs' use of a pseudonym. *Cf. Armstrong*, 2017 WL 2636519 at *2 ("[W]hile the Court is well-aware of the public's general interest in having access to court records, the Court finds that Plaintiffs' rights to privacy outweighs the public interest's in Plaintiffs' actual identity in this case. In fact, the use of pseudonyms that protect Plaintiffs' identity may allow greater public access to the information, files, and records at issue in this dispute.").

### VI. If Any Plaintiff Is Not Allowed to Proceed Anonymously, Plaintiffs Request Leave to Amend Their Complaint to Identify such Plaintiff(s)

Finally, if the Court disagrees and rules that any Plaintiff (or all of them) may not proceed anonymously, Plaintiffs request leave to amend their Complaint to identify them. Although dismissal of a complaint under Rule 10(a) is an available remedy to the Court, in this case, leave to amend is the more appropriate remedy.

First, if the Court rules on this Motion sooner than 21 days after Defendant serves a

responsive pleading or Rule 12(b), (e), or (f) motion, Rule 15(a)(1) allows Plaintiffs to amend their pleading once as a matter of course. Plaintiffs would use that opportunity to cure any error the Court finds with their proceeding anonymously.

Second, if the Court rules on this Motion more than 21 days after Defendant serves a responsive pleading or Rule 12(b), (e), or (f) motion, Plaintiffs may amend their Complaint with Defendant's consent or the Court's leave, which leave should be given freely when justice so requires. If Defendant does not consent to such amendment, the Court would then consider (1) undue delay, bad faith or dilatory motive on the Plaintiffs' part; (2) repeated failure to cure deficiencies by amendments previously allowed; (3) undue prejudice to Defendant if amendment were allowed; and (4) futility of amendment. *Stanton v. Battelle Energy Alliance, LLC*, 83 F.Supp.3d 937, 949 (D. Idaho 2015).

Here, there would be no delay, bad faith, or dilatory motive. Plaintiffs request leave as an alternative remedy to a Rule 10(a) dismissal at an early stage of the case before discovery has even commenced. There would be no repeated failure to cure deficiencies by amendments previously allowed, as this is the first request for amendment and then only as an alternative to a Rule 10(a) dismissal. There would be no undue prejudice to Defendant: discovery has not commenced, no hearings have been scheduled, and trial has not been scheduled. Finally, the amendment would not be futile because publishing the identities of Plaintiffs would only affect them personally, and not the substantive merits or other justiciability aspects of the action.

## CONCLUSION

Plaintiffs respectfully request leave to proceed anonymously as Jane Doe, Kelly

Doe, and John Doe. If the Court disagrees, Plaintiffs request leave to amend their Complaint rather than have it dismissed at this early stage.

DATED this 13th day of October, 2023.

/s/ Monica Fabbi
INTERMOUNTAIN FAIR HOUSING COUNCIL

/s/ Alyson A. Foster
BJORKMAN DEMPSEY FOSTER PLLC

*Attorneys for Plaintiffs*

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR LEAVE TO PROCEED ANONYMOUSLY – 15