UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JANE DOE, an individual; KELLY DOE, an individual; JOHN DOE, an individual; and DOES I-X, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNIVERSITY OF IDAHO, a public University governed by the BOARD OF REGENTS OF THE UNIVERSITY OF IDAHO aka the STATE BOARD OF EDUCATION, an executive department of the STATE OF IDAHO; C. SCOTT GREEN, President of the University of Idaho, in his official and individual capacities; JOHANNA KALB, Dean of the University of Idaho College of Law, in her official and individual capacities; JACKIE WERNZ, Interim Director of the Office of Civil Rights and Investigations of the University of Idaho, in her official and individual capacities; CORY VOSS, Director of the Center for Disability Access and Resources of the University of Idaho, in her individual and official capacities; RICHARD SEAMON, Professor of the University of Idaho Law School, in his individual and official capacities; JAKE DINGEL, an individual; and DOES 11 through 50, <br><br> Defendants. | Case No. 1:23-cv-00409-AKB <br><br> MEMORANDUM DECISION AND ORDER |

Pending before the Court are the motions to dismiss of Defendant University of Idaho ("the University") (Dkts. 23, 26); Defendants C. Scott Green, Johanna Kalb, Richard Seamon, Cory

**MEMORANDUM DECISION AND ORDER - 1**

Voss, and Jackie Wernz ("the University Individuals") (Dkt. 42); and Defendant Jake Dingel (Dkt. 45). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal arguments are adequately presented and that oral argument would not significantly aid its decision-making process, and it decides the motions on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons set forth below, the Court grants Defendants' motions to dismiss. The Court also grants Plaintiffs' request for leave to amend their complaint but only as to those claims the Court dismisses without prejudice.

## I.    BACKGROUND

On September 15, 2023, Plaintiffs filed a complaint against the University alleging numerous discrimination claims. (Dkt. 1). In their complaint, Plaintiffs identified themselves as former law students of the University's College of Law using the pseudonyms, "Jane Doe," "Kelly Doe," and "John Doe." (*Id.* at ¶¶ 14-16). The University moved to dismiss Plaintiffs' complaint. (Dkt. 23). That same day, however, Plaintiffs filed an amended complaint to add new defendants. (Dkt. 24). Those defendants include the University Individuals, who are officials of the University. Plaintiffs assert their claims against the University Individuals in both their official and personal capacities. Plaintiffs also added Dingel, who was a student attending law school with Plaintiffs, as a defendant.

Plaintiffs' amended complaint purports to allege violations of the Fair Housing Act (FHA), 42 U.S.C. §§ 3601-3619; Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681; Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d-2000d-7; the Rehabilitation Act, 29

U.S.C. § 794; Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12132; and the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C. § 1983. Plaintiffs seek, among other things, monetary damages, injunctive relief, and declaratory relief.

In January 2024, the University moved to dismiss Plaintiffs' claims against it. (Dkt. 26). Thereafter, in April 2024, the University Individuals moved to dismiss Plaintiffs' claims against them. (Dkt. 42). Finally, in May 2024, Dingel likewise moved to dismiss Plaintiffs' claims against him. (Dkt. 45). Plaintiffs oppose these motions, and alternatively, request leave to amend their complaint.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a court's subject matter jurisdiction. A lack of jurisdiction is presumed unless the party asserting jurisdiction establishes it exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A Rule 12(b)(1) motion can present either a facial or factual attack on jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id*. Here, Defendants' jurisdiction challenges are facial challenges.

### B.    Rule 12(b)(6)

A dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate where a complaint fails to state a claim upon which relief can be granted. Rule 8(a)(2) requires only a short and plain statement of the claim, showing the plaintiff is entitled to relief and giving the defendant fair notice of plaintiff's claim and the grounds upon which it rests. *Bell Atlantic*

MEMORANDUM DECISION AND ORDER - 3

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it requires "more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*

To survive a Rule 12(b)(6) motion, a claim requires a complaint to have enough factual basis which, if true, states a plausible claim for relief. *Twombly*, 550 U.S. at 555. A claim has facial plausibility when the plaintiff pleads factual content allowing the court to draw a reasonable inference the defendant is liable for the alleged misconduct. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

### III.   ANALYSIS

#### A.   Rule 8

As an initial matter, the Court notes Plaintiffs' amended complaint fails to comply with Rule 8(a) for numerous reasons. Rule 8(a) requires a short and plain statement of the claim showing the pleader is entitled to the requested relief. Fed. R. Civ. P. 8(a)(2). Courts have held that a complaint which is needlessly long, highly repetitious, or confused violates Rule 8(a)'s requirement of a short and plain statement. 5 FED. PRAC. & PROC. CIV. § 1217 (4th ed. 2024).

Further, Rule 8(a) requires a showing, rather than a blanket assertion, of entitlement to relief. *Twombly*, 550 U.S. at 555 n.3. A plaintiff's complaint must contain facts stating a claim for relief plausible on its face and allowing the court to draw the reasonable inference the defendant

is liable for the misconduct alleged. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The short, plain statement must provide each defendant with fair notice of what the plaintiff's claim is and the grounds on which that claim rests. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005).

Complaints, which are "argumentative, prolix, replete with redundancy, and largely irrelevant" and consist largely of immaterial background information, are subject to dismissal under Rule 8. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011). A Rule 8 dismissal is allowed even if "a few possible claims" can be identified and the complaint is not "wholly without merit." *McHenry v. Renne,* 84 F.3d 1172, 1179 (9th Cir.1996) (stating Rule 8's requirements apply "to good claims as well as bad"). "[I]n the context of a multiparty, multiclaim complaint each claim should be stated as succinctly and plainly as possible even though the entire pleading may prove to be long and complicated by virtue of the number of parties and claims." 5 FED. PRAC. & PROC. CIV. § 1217 (4th ed. 2024). "Plaintiff[s] must eliminate from [their complaint] all preambles, introductions, arguments, speeches, explanations, stories, griping, vouching evidence, attempts to negate possible defenses, summaries, [and] the like." *Robinson v. Saxe*, No. CV 11-04289 ODW (RZ), 2011 WL 6960836, at *2 (C.D. Cal. Nov. 29, 2011) (citing *McHenry,* 84 F.3d at 1180).

Here, determining which Defendants are accused of which alleged violations, what specific acts each Defendant committed constituting that violation, and when the alleged violation occurred is impossible from the face of Plaintiffs' amended complaint. That complaint is 73 pages; includes approximately 300 paragraphs, many of which have numerous subparts; and has "thirteen" counts—although the amended complaint skips numbers 6 and 12. Notably, the amended complaint fails to identify which causes of action Plaintiffs assert against which Defendants,

leaving both the Court and Defendants to surmise which claims Plaintiffs have alleged against which Defendants. Further, although Plaintiffs' general factual allegations are very long, many of their claims for relief are conclusory, generally allege only the legal elements of each cause of action, and fail to allege specific facts supporting each element of each claim. Meanwhile, several other claims allege numerous facts which do not bear on the elements of the claim.

Nevertheless, the Court addresses Defendants' motions to dismiss to determine which of Plaintiffs' claim fail as a matter of law. As noted below, the Court dismisses claims failing as a matter of law with prejudice under Rule 12(b)(1) for lack of jurisdiction. The Court dismisses the remaining claims without prejudice under Rule 12(b)(6) for failure to state a claim. The Court grants Plaintiffs' request to amend only as those claims the Court dismisses without prejudice. If Plaintiff amends those claims, they must do so in compliance with Rule 8 and this decision.

**B.    FHA -- Counts One, Two, Three and Four**

Plaintiffs' Counts One through Four assert violations of the FHA. Generally, the FHA prohibits discrimination based on race, color, religion, sex, familial status, national origin, or handicap regarding "the sale or rental of a dwelling." 42 U.S.C. § 3604(a)-(f). The prohibited conduct includes the refusal to sell, rent, or negotiate the sale or rent of a dwelling to a protected individual; discriminating against a protected individual based on the terms, conditions, or privileges when selling or renting a dwelling; advertising a dwelling for sale or rent in a manner indicating a preference, limitation, or discrimination based on a protected class; and representing to any protected individual that an available dwelling is not available for sale, rent, or inspection. 42 U.S.C. § 3604(a)-(d). Also, § 3617 provides "it shall be unlawful to coerce, intimidate, threaten, or interfere with any person" exercising his protected rights under the FHA. 42. U.S.C. § 3617.

The statute allows any "aggrieved person" to file a civil action seeking damages for a violation of the statute. 42 U.S.C. §§ 3613(a)(1)(A), 3613(c)(1).

Plaintiffs' Count One alleges discrimination under the FHA based on race on behalf of John and Kelly. (Dkt. 24 at ¶¶ 202-10). Count Two alleges discrimination under the FHA based on national origin on John's behalf. (*Id*. at ¶¶ 211-19). Count Three alleges discrimination under the FHA based on sex on all Plaintiffs' behalf. (*Id*. at ¶¶ 220-28). Likewise, Count Four alleges interference, coercion, or intimidation in violation of the FHA on all Plaintiffs' behalf. (*Id*. at ¶¶ 229-34). These claims generally allege either "Defendants" or "the University, its agents, and other Defendants" violated § 3604(a) through (b).

### 1.    University

The University moves to dismiss Plaintiffs' FHA claims, arguing they are barred by the Eleventh Amendment. (Dkts. 23-1 at p. 6; 26-1 at p. 3). The doctrine of sovereign immunity under the Eleventh Amendment provides states may not be sued by private individuals in federal court unless the state consents in unequivocal terms or Congress unequivocally expresses its intent to abrogate the immunity under a valid exercise of power. *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). "[T]he State of Idaho has not made a general waiver of its Eleventh Amendment sovereign immunity," *Citizens of Idaho v. Idaho*, No. 1:11-cv-620-ELJ-LMB, 2012 WL 3905235, at *2 (D. Idaho Aug. 15, 2012), and the University is an arm of the state and entitled to invoke the Eleventh Amendment immunity. *Fling v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) ("[A] state university is an arm of the state entitled to Eleventh Amendment immunity.").

"Courts have consistently concluded that Congress did not abrogate state sovereign immunity through enactment of the FHA." *Melton v. Oklahoma ex. rel. Univ. of Oklahoma*, 532

F. Supp. 3d 1080, 1088 (W.D. Ok. 2021); *McCardell v. U.S. Dep't of Hous. & Urban Dev.*, 794 F.3d 510, 522 n.89 (5th Cir. 2015) (citing cases). Indeed, the Ninth Circuit has ruled that the FHA does not contain the unequivocal expression necessary for an intentional Congressional waiver of sovereign immunity. *Gabriel v. Gen. Servs. Admin.*, 547 Fed. App'x 829, 831 (9th Cir. 2013); *see also Karbusheva v. Redwood Apartments*, No. 1:13-cv-000473-EJL-CWD, 2014 WL 6845848, at *6 (D. Idaho Dec. 3, 2014) ("The State of Idaho, as well as its agencies and officials, cannot be sued for damages under the [FHA].").

Nonetheless, Plaintiffs rely on 42 U.S.C. § 2000d-7 to argue Congress intentionally "abroga[ted] Eleventh Amendment immunity for violations of the nondiscrimination provisions of the FHA for recipients of federal funds." (Dkt. 34-1 at p. 6). Section 2000d-7 is a provision in the Rehabilitation Act Amendments of 1986 and provides:

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, *or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.*

42 U.S.C. § 2000d-7 (emphasis added). Specifically, Plaintiffs argue Congress intentionally abrogated Eleventh Amendment immunity for FHA claims under "the natural reading" of this latter (italicized) phrase regarding receipt of federal funding. (Dkt. 34-1 at p. 7). In other words, Plaintiffs argue Congress conditioned the University's receipt of federal financial assistance on its waiver of sovereign immunity against FHA claims.

As Plaintiffs concede, however, no court has ever concluded § 2000d-7 abrogated sovereign immunity for FHA claims. The only case Plaintiffs cite, *Melton*, concludes the opposite.

532 F. Supp. 3d at 1089. In *Melton*, the plaintiff relied on § 2000d-7(a) to argue the university

defendant in that case waived its sovereign immunity to FHA claims by receiving federal funding.

The *Melton* court rejected this argument, ruling:

> Congress could have expressly abrogated sovereign immunity in the FHA, but it
> did not. Congress could have expressly included the FHA in the list of
> nondiscrimination statutes delineated in the Rehabilitation Act's waiver provisions,
> but it did not. And, . . . the FHA's focus goes well beyond discrimination by
> recipients of federal financial assistance.

*Id.* This Court agrees with the ruling in *Melton*. Absent clear evidence Congress intended for the

states to waive their sovereign immunity to FHA claims by accepting federal funding, this Court

declines to conclude § 2000d-7 abrogated the University's Eleventh Amendment immunity to

Plaintiffs' FHA claims.

Further, the Court disagrees with Plaintiffs' assertion that *United States v. Georgia*, 546

U.S. 151 (2006), and *Tennessee v. Lane*, 541 U.S. 509 (2004), require the Court to conduct a "case-

by-case" analysis to determine whether their allegations are "authorized by Section 5 of the

Fourteenth Amendment." (Dkt. 34-1 at pp. 8-9). The decisions in *Georgia* and *Lane*, and the other

cases Plaintiffs cite, address Congress's abrogation of sovereign immunity under the ADA—not

the FHA. Plaintiffs do not cite any case law applying the analysis in *Georgia* and *Lane* for purposes

of determining a waiver of sovereign immunity for FHA claims. Because the Court lacks subject

matter jurisdiction over Plaintiffs' Counts One through Four against the University, it dismisses

those claims with prejudice.

## 2.    University Individuals

The University Individuals also move to dismiss Plaintiffs' claims under the FHA. Three

of these claims, Counts One through Three, generally allege Defendants "steered the Plaintiffs

away from [their] desired community" because of their race, national origin, and sex, and Count Four alleges Plaintiffs "lost housing opportunity" because of Defendants' alleged conduct. (Dkt. 24 at ¶¶ 206, 215, 224, and 233). The University Individuals argue these allegations fail to aver "any conduct whatsoever regarding rentals, negotiations, terms, [and] advertising," including "indicat[ing] units were not available to Plaintiffs." (Dkt. 42-1 at p. 5). Further, the University Individuals note Plaintiffs have not alleged either "that they attempted to rent an on-campus apartment [or] that the dwellings they did rent were under university control." (*Id.* at p. 5 n.2).

In response, Plaintiffs assert that the FHA's term "dwelling" includes "communities and neighborhoods" (Dkt. 46 at p. 7) and that they "wanted to live in Moscow"; "Defendants made living in Moscow . . . unsafe, humiliating, and terrifying"; and as a result, Plaintiffs "left their homes in Moscow." (*Id.* at p. 8). In support, Plaintiffs point to alleged discriminatory statements made during class, an alleged failure to train University faculty and staff about discrimination, a "prayer circle" conducted on campus, and failures to accommodate remote learning. (*Id.* at pp. 9-10).

The Court disagrees with Plaintiffs' implicit assertion that Congress broadly intended the FHA to extend to alleged discriminatory conduct which occurred on-campus and was unrelated to Plaintiffs' housing. Plaintiffs' assertion that a "dwelling" means a community is both overbroad and contradicts the FHA. The statute specifically defines "dwelling" to mean "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof." 42 U.S.C. § 3602(b). The statute does not include a "community" in this definition.

MEMORANDUM DECISION AND ORDER - 10

Further, Plaintiffs' reliance on three District of Illinois decisions to argue they have alleged FHA claims is misplaced. Specifically, Plaintiffs cite *Stirgus v. Benoit*, 720 F. Supp. 119 (N.D. Ill. 1989), *Seaphus v. Lilly*, 691 F. Supp. 127 (N.D. Ill. 1988), and *Stackhouse v. DeSitter*, 620 F. Supp. 208 (N.D. Ill. 1985), to argue Defendants interfered with their right to live in Moscow, Idaho. (Dkt. 46 at pp. 7, 10). In each of those cases, however, the plaintiffs alleged the defendants' racially motivated violence was intended to force them from their home. *Stirgus*, 720 F. Supp. at 120 (alleging "defendants agreed to firebomb [plaintiff's] house to prevent her from living in that neighborhood"); *Seaphus*, 691 F. Supp. at 139 (alleging violence and property damage aimed at inducing black residents to move out of their home); *Stackhouse*, 620 F. Supp. at 211 (alleging firebombing of black family's car in attempt to frighten them away from neighborhood). In contrast to these cases, Plaintiffs do not allege any University Individual is a neighbor or committed any acts, violent or otherwise, designed to drive Plaintiffs from their homes and neighborhoods.

For these reasons, the Court concludes Plaintiffs have failed to state a claim for relief and dismisses Counts One through Four against the University Individuals without prejudice.

### 3.     Dingel

Dingel, likewise, moves to dismiss Plaintiffs' FHA claims. In response to Dingel's argument that Plaintiffs failed to allege conduct supporting an FHA claim against him, Plaintiffs point to their allegations that during a "social mixer" at John's home, Dingel aggressively approached John, called John a "faggot," and caused John to "to react defensively" and that "on multiple occasions beginning in the fall of 2021, Dingel traipsed about the basement of the law library carrels and parking lot in a stereotypically 'effeminate' manner with Pride and Black Lives

Matter flags tied on like capes to mock LGBTQIA+ people and people of color."[1] (Dkt. 47 at p. 12; *see also* Dkt. 24 at ¶¶ 91-94).

Plaintiffs argue this "conduct significantly contributed to making the community unsafe for LGBTQIA+ students and people of color [and] were contributing factors in [Jane's] and [Kelly's] decision to leave Moscow." (Dkt. 47 at p. 15). To support this assertion, Plaintiffs argue—as they did in opposition to the University Individuals' motion to dismiss—that the term "dwelling" under the FHA means the entire community of Moscow. (*Id.* at p. 10). Again, the Court declines to broadly construe the FHA to extend to alleged discriminatory conduct occurring on campus and unrelated to Plaintiffs' housing.

Regarding John's FHA claim against Dingel, Plaintiffs argue that "as a result of Dingel's attack, John immediately transferred from [his living] unit to a different unit—thereby, in essence, making [the original] unit unavailable to John." (*Id.* at p. 12; *see also* Dkt. 24 at ¶ 96) ("Dingel's verbal and physical acts toward John caused him mental harm and apprehension of additional mental and/or physical harm. John was so concerned for his safety that he transferred to a different unit after the assault."). Plaintiffs compare the incident between Dingel and John to the defendant's conduct in *United States v. Lee*, 935 F.2d 952 (8th Cir. 1991). In that case, Lee burned a cross near an apartment building "to take a stand" and, as he said, to "get rid of the bad blacks" living in the

---

[1]    Plaintiffs also reference their lengthy allegations regarding John's complaint against Dingel before the University's Office of Civil Rights & Investigations and his subsequent appeal to the Student Conduct Board. That John complained about Dingel to these entities and the entities investigated that complaint does not support Plaintiffs' assertion that Dingel's alleged conduct gives rise to a claim for relief under the FHA.

building; was convicted of violating 18 U.S.C. § 241, which criminalizes interference with housing rights by means of force; and challenged § 241 under the First Amendment. *Lee*, 935 F.2d at 954.

While John's allegations come closer to alleging an FHA violation because at least some of Dingel's alleged conduct occurred at John's home, the Court disagrees Dingel's conduct is comparable to Lee's or that *Lee* provides guidance in this case to determine whether Plaintiffs have adequately alleged a claim for relief under the FHA against Dingel. Instead, this Court notes that courts addressing conduct under FHA have concluded "interference" under § 3617 "is more than a 'quarrel among neighbors' or an isolated act of discrimination, but rather is a 'pattern of harassment, invidiously motivated.'" *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009) (quoting *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 330 (7th Cir. 2004)). "[A] plaintiff cannot rely on § 3617 for trivial or isolated disputes." *Hatfield v. Cottages on 78th Comty. Ass'n*, Nos. 21-4035, -4042, -4045; 2022 WL 2452379, at *9 (10th Cir. July 6, 2022). "Rather, there must be conduct 'that a person of normal fortitude would view as coercive, intimidating, threatening, or interfering with the exercise of her protected right under the FHA.'" *Id.* (quoting *Geraci v. Union Square Condo. Ass'n*, 891 F.3d 274, 277 (7th Cir. 2018)).

Although Dingel's alleged conduct, if true, is reprehensible, the Court concludes John's allegations about a single encounter with Dingel at John's home during a "social mixer" does not constitute "interference" with John's housing under § 3617. Further—as with Jane and Kelly— Dingel's alleged discriminatory conduct at the law school was not directed at John's housing. For this reason, that conduct is not actionable under the FHA. Accordingly, the Court dismisses without prejudice Plaintiffs' Counts One through Four against Dingel for failure to state a claim.

C.      **Title IX -- Counts Five, Seven, and Eight**

Plaintiffs' Counts Five, Seven, and Eight each purport to allege Title IX violations. Title IX provides that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). As relevant here, a plaintiff may allege a Title IX claim under three theories: sexual harassment, pre-claim assault, or retaliation.

To establish an individual sexual harassment or assault claim, a plaintiff must allege five elements: (1) the school exercised substantial control over both the harasser and the context in which the harassment occurred; (2) the plaintiff suffered harassment so severe, pervasive, and objectively offensive that it deprived plaintiff access to the school's educational opportunities or benefits; (3) a school official, who had authority on the school's behalf to address and institute corrective measures had actual knowledge of the harassment; (4) the school acted with deliberate indifference to the harassment such that its response was clearly unreasonable based on the known circumstances; and (5) the school's deliberate indifference subjected the plaintiff to harassment. *Karasek v. Regents of Univ. of California*, 956 F.3d 1093, 1105 (9th Cir. 2020).

Another theory of Title IX liability is what the Ninth Circuit has referred to as a "pre-assault claim." Under such a claim, the school intentionally violates Title IX if it has an official policy that violates Title IX. *Id.* at 1112. To survive a motion to dismiss a pre-assault claim, a plaintiff must allege that: (1) the school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious, (3) in a context subject to the school's control, and (4) the plaintiff suffered harassment

so severe, persuasive, and objectively offensive it deprived the plaintiff access to the school's educational opportunities or benefits. *Id.*

A plaintiff may also assert a claim for retaliation under Title IX. A plaintiff who lacks direct evidence of retaliation must first make out a prima facie showing that: (a) she was engaged in protected activity; (b) she suffered an adverse action; and (c) a causal link between the two exists. *MacIntyre v. Carroll Coll.*, 48 F.4th 950, 954 (9th Cir. 2022). Once a plaintiff makes this threshold showing, the defendant must articulate a legitimate, non-retaliatory reason for the challenged action. *Id.* If the defendant does so, then the plaintiff must show the reason is pretextual, either directly by persuading the court a discriminatory reason more likely motivated the employer or indirectly by showing the employer's proffered explanation is unworthy of credence. *Id.*

### 1.      The University

Here, Plaintiffs' attempt to allege Title IX claims highlights their failure to comply with Rule 8. In Count Five, Plaintiffs appear to allege a pre-assault claim averring, for example, that the University "failed to conduct formal investigations into a majority of [the] complaints" in an unidentified "University report" issued before Plaintiffs were students and, as a result, created "an environment that enabled and emboldened discrimination on the basis of sexual orientation." (Dkt. 24 at ¶ 238.a.). Similarly, they allege "the University maintained an official policy, custom, and/or practice of deliberate indifference to a known overall risk of sex discrimination and retaliation against students at the law school." (*Id.* at ¶ 242). Meanwhile, Plaintiffs also appear in Count Five to attempt to allege individual sexual harassment claims on behalf of John, Jane, and Kelly.

Despite the general nature of Plaintiffs' allegations, the University attempts to cabin their allegations and address them under the prima facie elements of the applicable theories of liability: sexual harassment, pre-assault, and retaliation. Nevertheless, Plaintiffs appear to disclaim a pre-assault claim, even though they allege the University had a policy of deliberate indifference to discrimination. (Dkt. 34-1 at p. 23) (noting without argument that "it is entirely possible that such institutional discrimination exists" but stating their allegations are adequate "regardless of the precise theory"). Meanwhile, in opposition to the University's motion, Plaintiffs point to an additional twenty-five general factual allegations which are not contained in Count Five. (*Id.*). Finally, although Plaintiffs address Count Five, they never address Counts Seven or Eight in their opposition to the University's motion. Based on this record, determining the theory and specific facts on which Plaintiffs rely to assert their Title IX claims is not possible.

For these reasons, the Court dismisses without prejudice Counts Five, Seven, and Eight against the University for failure to state a claim.

## 2.     The University Individuals

The University Individuals also move to dismiss Plaintiffs' Title IX claims, arguing the Court lacks federal subject matter jurisdiction over Counts Five, Seven, and Eight. Plaintiffs concede they cannot bring Title IX claims against the University Individuals, who cannot be liable for Title IX violations. Plaintiffs argue, however, that they may assert a Title IX claim for injunctive relief against the University Individuals in their official capacities. (Dkt. 46 at pp. 4, 19).

Plaintiffs are correct that the Eleventh Amendment does not bar an action seeking prospective relief, such as injunctive relief, against a state official for violation of federal law. *R.W.*

*v. Columbia Basin College*, 77 F.4th 1214, 1220 (9th Cir. 2023) (citing *Ex Parte Young*, 209 U.S. 123, 159-60 (1908)). Generally, however, "[a] student's graduation moots claims for declaratory and injunctive relief." *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 798 (9th Cir. 1999). In this case, Plaintiffs' allegations indicate, and they do not dispute, that they have graduated from the University since bringing this action.

Plaintiffs argue, however, that an exception to the mootness doctrine applies. In support, they rely on *Washegesic v. Bloomingdale Public Schs.*, 33 F.3d 679 (6th Cir. 1994). In *Washegesic*, a student sought an injunction requiring his high school to remove a portrait of Jesus Christ displayed outside the gymnasium. *Id.* at 681. After the student graduated, the school argued his case was moot. *Id.* The Sixth Circuit rejected this argument, concluding the general rule that a plaintiff's graduation moots his claim against a school was inapplicable because the plaintiff's standing was not derived from his status as a student. *Id.* Rather, the Sixth Circuit concluded "the portrait of Jesus affects students and non-students alike." *Id.* It reasoned the plaintiff continued to have standing post-graduation as a non-student because he still visited the school and attended school functions. *Id.* Accordingly, the Sixth Circuit concluded the plaintiff's claim was not moot.

Plaintiffs' reliance on *Washegesic* is misplaced. Unlike that case, Plaintiffs in this case do not seek injunctive relief to remedy conduct from which they will continue to suffer despite no longer being students. Nothing in their allegations indicate the alleged conduct will be directed at them as non-students in the future. Indeed, Plaintiffs have failed to aver any allegations supporting an exception to the mootness doctrine. For this reason, the Court dismisses Plaintiffs' Title IX claims against the University Individuals in their official capacities without prejudice. If Plaintiffs choose to amend their claim, they must establish both an exception to the mootness doctrine and

that the defendant official has authority to grant the relief sought. The Court dismisses with prejudice Plaintiffs' Title IX claims against the University Individuals in their personal capacities.

### 3. Dingel

Plaintiffs concede they attempted to "bring claims against Dingel only under the FHA." For this reason, the Court dismisses any Title IX claim against Dingel with prejudice.

### D. Title VI – Count Nine

Plaintiffs' Count Nine alleges discrimination in violation of the Title VI on behalf of Kelly and John. (Dkt. 24 at ¶¶ 263-71). Title VI provides that "no person in the United States, shall on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To state a claim for damages under Title VI, "a plaintiff must first allege that the entity involved is (1) engaging in discrimination, and (2) receiving federal financial assistance." *Joseph v. Boise State Univ.*, 998 F. Supp. 2d 928, 944 (D. Idaho 2014).

To state a prima facie case of discrimination in the educational context, a plaintiff must allege: (1) she is a member of the protected class; (2) she is meeting the school's legitimate educational expectations; (3) she suffered an adverse education action; and (4) she suffered worse treatment than that of similarly situated students not in the protected class. *Id.*; *see also Brewer v. Bd. of Trustees. of Univ. Illinois,* 479 F.3d 908, 921 (7th Cir. 2007) (same). Additionally, a plaintiff should allege racial bias motivated a defendant's actions because a critical question is whether the defendant's actions or inactions were *because of* its racial bias. *Joseph*, 998 F. Supp. 2d at 944.

### 1.    The University

Again, Plaintiff's Title VI claim against the University fails to comply with Rule 8. That claim very generally states the University's "conduct as alleged at length herein constitutes discrimination based on race in violation of Title VII [sic]" and it "subject[ed] Plaintiffs to a hostile learning environment because of race." (Dkt. 24 at ¶¶ 267-68). The claim is devoid of any allegations specific to John and Kelly other than they are law students. (*Id.* at ¶ 264). Only after the University challenged Plaintiffs' Title VI claim did Plaintiffs identify any allegations that might support it. As to Kelly, Plaintiffs identify voluminous general factual allegations regarding Kelly's experiences at the University. (Dkt. 34-1 at p. 19). While some of the allegations suggest the possibility of racial discrimination, the allegations fail to specifically aver the prima facie elements of a Title VI claim.

The allegations Plaintiffs identify in opposition to the University's motion to dismiss John's claim likewise fail to aver racial discrimination. Those allegations focus on Dingel's conduct, John's complaint to the University's Office of Civil Rights & Investigations (OCRI), the OCRI's response, John's appeal of the OCRI's decision, and John's need for reasonable accommodations. Other than alleging John identifies as black, the general factual allegations Plaintiffs identify to support John's Title VI claim do not relate to that claim. For these reasons, the Court dismisses without prejudice Plaintiffs' claim for a Title VI violation against the University for failure to state a claim.

### 2.    The University Individuals

To the extent Plaintiffs attempt to allege a Title VI claim against the University Individuals, it fails for the same reasons discussed above in Section III.C.2. A Title VI claim against a

University official in his or her official capacity is redundant of a Title VI claim against the University unless: (1) Plaintiffs are seeking injunctive relief; (2) the defendant official has authority to provide that relief; and (3) the claim is not moot, despite Plaintiffs' graduation. Accordingly, the Court dismisses Plaintiffs' Title VI claim against the University Individuals in their official capacities without prejudice and in their personal capacities with prejudice.

### 3.    Dingel

Plaintiffs concede they attempted to "bring claims against Dingel only under the FHA." For this reason, the Court dismisses any Title IX claim against Dingel with prejudice.

### E.    Rehabilitation Act and ADA – Count Ten

Plaintiffs' Count Ten alleges discrimination in violation of the Rehabilitation Act and Title II of the ADA on behalf of Kelly and John. (Dkt. 24 at ¶¶ 272-79). Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a Title II claim, a plaintiff must allege: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's service, program or activity, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *See id.*; *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997). Similarly, under § 504 of the Rehabilitation Act, a plaintiff must allege: (1) he is an "individual with a disability"; (2) he is "otherwise qualified" to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance. *Weinreich*, 114 F.3d at 978. The analysis

of a Rehabilitation Act claim and an ADA claim is the same. *See, e.g.*, *Csutoras v. Paradise High School*, 12 F.4th 960, 969 n.11 (9th Cir. 2021) (noting no significant difference in analysis of rights and obligations ADA and Rehabilitation Act create).

### 1.     The University

The University moves to dismiss Plaintiffs' Rehabilitation and ADA claim, arguing the Eleventh Amendment bars the claim. (Dkts. 23-1 at p. 6; 26-1 at p. 4). As noted above, the doctrine of sovereign immunity under the Eleventh Amendment provides states may not be sued by private individuals in federal court unless the state consents in unequivocal terms or Congress unequivocally expresses its intent to abrogate the immunity under a valid exercise of power. *Bd. of Trustees of Univ. of Alabama*, 531 U.S. at 363. In some instances, Congress may abrogate Eleventh Amendment immunity through its enforcement powers under § 5 of the Fourteenth Amendment. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 71 (2000).

To determine whether Congress abrogated Eleventh Amendment immunity, a court must address two questions. *Id.* at 73. First, the court must determine whether Congress undisputedly expressed its intent to abrogate the Eleventh Amendment immunity. Answering this question here, Congress did unequivocally express its intent to abrogate Eleventh Amendment immunity when enacting the ADA. *Kohn v. State Bar of California*, 497 F. Supp. 3d 526, 534 (N.D. Cal. 2020). The ADA specifically provides that "a State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202; *see also Lane*, 541 U.S. at 518 (concluding the ADA unequivocally expressed Congress's intent to abrogate Eleventh Amendment immunity); *Georgia*, 546 U.S. at 154 (same).

**MEMORANDUM DECISION AND ORDER - 21**

The second question is whether Congress acted under a valid grant of constitutional authority under § 5 of the Fourteenth Amendment when expressing its intent to abrogate immunity. *Kohn*, 497 F. Supp. 3d at 534; *Doe v. Regents of Univ. of California*, No. 22-CV-1506 JLS (WVG), 2023 WL 2899530, at *8 (S.D. Cal. Apr. 10, 2023). Although the Ninth Circuit has not yet addressed this question, at least four other circuit courts have addressed the question and have ruled the Eleventh Amendment does *not* bar a plaintiff's Title II claims in the context of public higher education. *See Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553-56 (3d Cir. 2007) (concluding "Title II is a justifiable prophylactic measure to avoid the risk of unconstitutional treatment of disabled students"); *Toledo v. Sanchez*, 454 F.3d 24, 36-40 (1st Cir. 2006) (concluding "Title II, as it applies to the class of cases implicating the right of access to public education, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment"); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 486-90 (4th Cir. 2005) (concluding "Title II of the ADA is valid § 5 legislation, at least as it applies to public higher education"); *Ass'n for Disabled Americans, Inc. v. Florida Intern. Univ.*, 405 F.3d 954, 958-59 (11th Cir. 2005) (concluding "Title II of the ADA, as applied to access to public education, constitutes a valid exercise of Congress's enforcement power under Section 5 of the Fourteenth Amendment"); *see also Guttman v. Khalsa*, 669 F.3d 1101, 1122 (10th Cir. 2012) (noting that "there is a trend of courts holding that, absent the need to vindicate a fundamental right or protect a suspect class, Congress may not abrogate state sovereign immunity," but there is "one exception to this trend: discrimination against students in public education"). Additionally, at least two district courts in the Ninth Circuit have likewise concluded Congress constitutionally abrogated states' sovereign immunity under Title II in the context of

higher education. *See Regents of the Univ. of California,* 2023 WL 2899530, at *11 (ruling Eleventh Amendment does not bar student's ADA claim against university); *Do v. Arizona State Univ.*, No. CV-22-00190-PHX-JJT, 2022 WL 4235599, at *7 (D. Ariz. Sept. 14, 2022) (same).

Assuming—based on these authorities—that the Eleventh Amendment does not bar Plaintiffs' ADA claim in this case, Plaintiffs have failed to allege a claim for relief under the ADA. In support of their claim, Plaintiffs allege only generally that "the University failed to provide reasonable accommodations to Plaintiffs, including by creating unnecessary procedural barriers to seek accommodations" and "the University's failure to provide reasonable accommodations created a hostile learning environment based on disability." (Dkt. 24 at ¶¶ 275-76). These allegations fail to state a claim for relief. By way of nonexclusive example, Plaintiffs have failed to allege each of them is a "qualified individual with a disability" who may bring an ADA claim. *See, e.g.*, *Weinreich*, 114 F.3d at 978 (stating prima facie case). Accordingly, the Court dismisses Plaintiffs' Count Ten against the University without prejudice.

### 2. University Individuals

To the extent Plaintiffs attempt to allege a disability discrimination claim under the ADA and the Rehabilitation Act against the University Individuals, it fails for the same reasons discussed above in Section III.C.2. Such a claim against a University official in his or her official capacity is redundant of a claim against the University unless: (1) Plaintiffs are seeking injunctive relief; (2) the defendant official has authority to provide that relief; and (3) the claim is not moot, despite Plaintiffs' graduation, because an exception to the mootness doctrine applies. The Court dismisses Plaintiffs' Count Ten against the University Individuals in their individual capacities with prejudice and in their official capacities without prejudice.

### 3.   Dingel

Plaintiffs concede they attempted to "bring claims against Dingel only under the FHA." For this reason, the Court dismisses any Count Ten claim against Dingel with prejudice.

### F.   § 1983 – Count Eleven

Plaintiffs' Count Eleven asserts a § 1983 claim, alleging the University and the University Individuals violated by Equal Protection Clause of the Fourteenth Amendment. (Dkt. 24 at ¶¶ 280-89). "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal quotation marks omitted). To state a claim under § 1983 for a violation of the Equal Protection Clause, a plaintiff "must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class" and that plaintiff was treated differently from persons similarly situated. *Lam v. City & Cnty. of San Francisco*, 868 F. Supp. 2d 928, 951 (N.D. Cal. 2012), *aff'd*, 565 F. App'x 641 (9th Cir. 2014). A plaintiff may satisfy this showing by alleging four separate elements: (1) the plaintiff was treated differently from others similarly situated; (2) this unequal treatment was based on an impermissible classification; (3) the defendant acted with discriminatory intent in applying this classification; and (4) the plaintiff suffered injury as a result of the discriminatory classification. *Id*.

### 1.   The University

The University moved to dismiss Plaintiffs' Count Eleven, arguing Eleventh Amendment immunity bars a § 1983 claim against a state entity. Plaintiffs do not dispute this assertion. *See*

*Jackson v. Arizona*, 885 F.2d 639, 641 (9th Cir. 1989) (ruling § 1983 claims against states are legally frivolous), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). Instead, Plaintiffs argue the Eleventh Amendment does not bar their § 1983 claim against the University because they seek injunctive relief "to prevent *future harms.*" (Dkt. 34-1 at p. 13). Plaintiffs' argument is misplaced.

A State's sovereign immunity from suit in federal court "applies regardless of the nature of the relief sought." *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *see also Papasan v. Allain,* 478 U.S. 265, 276 (1986) (ruling sovereign immunity exists whether relief sought against State is legal or equitable). The Supreme Court has created an exception to Eleventh Amendment immunity to allow a plaintiff to sue a state official to enjoin unconstitutional conduct in *Ex Parte Young,* 209 U.S. 123. Under the *Ex Parte Young* doctrine, a plaintiff may sue an *official* of a state agency *in his official capacity for prospective equitable relief. Id.* at 155-56. The Court has reasoned that "if a state official violates federal law, he is stripped of his official or representative character and may be personally liable for his conduct; the State cannot cloak the officer in its sovereign immunity." *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 288 (1997) (O'Connor, Scalia, Thomas, JJ., concurring in part).

"The exception is narrow," however. *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). "It applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the states and their agencies, which are barred regardless of the relief sought." *Id.* Any suit seeking prospective or injunctive relief is deemed to be against state officials and not the state or its agencies. *Id.* In other words, the *Ex Parte Young* doctrine does not save

Plaintiffs' § 1983 action against the University. *See Richardson v. Dep't of Health and Welfare*, No. 2012 WL 667874, at *2 (D. Idaho Feb. 10, 2012) (ruling immunity barred claims against state entity). Accordingly, the Court dismisses with prejudice Plaintiffs' Count Eleven against the University.

### 2.     University Individuals

The University Individuals move to dismiss Count Eleven, arguing Plaintiffs failed to state a claim for relief for a § 1983 violation. The Court agrees. In support of Plaintiffs' § 1983 claims against all five University Individuals, they allege generally that "Plaintiffs were similarly situated in all other relevant aspects to other students"; the University Individuals (collectively referenced) "engaged in discrimination, condoned it, ratified it, *or* otherwise failed to remedy it"; and the collective Defendants violated the Equal Protection Clause "by subjecting [Plaintiffs] to the discrimination and retaliation based on sex, race, *or* color." (Dkt. 24 at ¶¶ 283-85, 287) (emphasis added).

These general allegations fail to state a claim for relief against any single University Individual. The broad sweeping allegations fail to give each Defendant fair notice of his or her alleged unlawful conduct and the purported claim. Although Plaintiffs attempt to explain their allegations in opposition to the motion to dismiss, their explanations continue to rest on generalizations. For these reasons, the Court dismisses Plaintiffs' § 1983 claim against the University Individuals in their personal and official capacities without prejudice. *See Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) (ruling "state officials are 'persons' under § 1983 when sued for prospective injunctive relief"); *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016)

(explaining the Eleventh Amendment does not bar claims for damages against state officials in their personal capacities).

### 3.      Dingel

Plaintiffs concede they attempted to "bring claims against Dingel only under the FHA." For this reason, the Court dismisses any Count Ten claim against Dingel with prejudice.

## G.      Declaratory Relief – Count Thirteen

Finally, Plaintiffs attempt to allege a claim for declaratory relief in Count Thirteen. Declaratory relief, however, is a remedy, not an independent cause of action. Section 2201 of Title 28 of the United States Code provides that "in a case of actual controversy . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

The remedy Plaintiffs apparently seek under Count Thirteen is an injunction prohibiting "the unlawful acts and the pattern and practice of discrimination described in the complaint." (Dkt. 24 at ¶ 292). As discussed herein, however, any claim for prospective relief is moot because Plaintiffs have graduated from the University. To the extent Plaintiffs seek prospective relief, they must allege facts establishing an exception to the mootness doctrine.

## H.      Leave to Amend

As noted, Plaintiffs may amend their complaint to allege claims the Court has dismissed for failure to state a claim and without prejudice. Any amendment, however, must comply with Rule 8. As the Ninth Circuit has noted, "[e]xperience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes

MEMORANDUM DECISION AND ORDER - 27

unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." *Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 841 (9th Cir. 2000). Complaints which fail to comply with Rule 8 impose unfair burdens on the litigants and the judge, particularly when (as in this case) a court must prepare outlines and charts to attempt to determine who is being sued for what. *Cafasso*, 637 F.3d at 1059. Any amendment must contain simple, concise, and direct allegations stating which Plaintiff is seeking relief against which Defendant. Further, the allegations must follow a recognized theory of recovery and identify adequate factual specifics regarding who, what, when, and where to allow the Court to infer a Plaintiff is entitled to relief.

## IV.   ORDER

IT IS ORDERED that:

1.  The University's Motions to Dismiss (Dkts. 23, 26) Plaintiffs' First Amended Complaint (Dkt. 24) are **GRANTED**. Counts One, Two, Three, Four, and Eleven are dismissed **with prejudice**.  Counts Five, Seven, Eight, Nine, and Ten are dismissed **without prejudice**.

2.  Defendants C. Scott Green, Johanna Kalb, Jackie Wernz, Cory Voss, and Richard Seamon's Motion to Dismiss (Dkt. 42) is **GRANTED**.

    a.  As against the University Individuals in their personal capacities, Counts Five, Seven, Eight, Nine, and Ten are dismissed **with prejudice**. Counts One, Two, Three, Four, and Eleven are dismissed **without prejudice**.

    b.  As against the University Individuals in their official capacities, all counts are dismissed **without prejudice** with respect to prospective relief for which the defendant has authority to grant and which is not moot.

3.      Defendant Jake Dingel's Motion to Dismiss (Dkt. 45) is **GRANTED**. Counts One, Two, Three, and Four are dismissed **without prejudice**. Counts Five, Seven, Eight, Nine, Ten, and Eleven Counts are dismissed **with prejudice**.

4.      If Plaintiffs choose to file an amended complaint, they must do within **thirty (30) days** of this Order's issuance.

DATED: September 26, 2024

Amanda K. Brailsford
U.S. District Court Judge